## OBERICH VS. GILMAN.

IMPROVEMENTS: (1–3) *Recovery for, by defendant in ejectment, claiming under invalid tax deed.*

TAX: (4, 5) *When lawfully assessed.*

SLAUGHTER HOUSE: (6, 7) *Construction of statute forbidding erection of, on bank of river.*

1. Defendant in ejectment, claiming title to the land under an invalid tax deed, can recover for his improvements only under secs. 30–32, ch. 141, R. S., and not under sec. 33, which must be construed as applying only to cases not included in the previous sections.

2. The words "officer authorized by law to execute the same," in sec. 30, mean an officer authorized to execute tax deeds, and *not* one authorized to execute *the particular deed* under which defendant claims; since *no* officer is authorized to execute a defective or invalid deed, and such a restriction of the words would defeat the· purpose of the statute.

3. The tax title claimant can recover for his improvements only where the tax described in his deed was "lawfully assessed."

4. But a tax must be held to have been "lawfully assessed" within the meaning of this statute, notwithstanding defects which invalidate the deed, if it was assessed upon land liable to taxation, and for a sum which the owner was justly liable to pay by reason of his ownership, and there was no injustice for which equity would relieve against it.

5. A failure to set opposite the description of a lot on the assessment roll the name of the owner or the word "unknown," would be no ground for equitable relief against the tax; and where the deed is adjudged invalid on that ground, the grantee, after verdict against him, in ejectment by the original owner, may still recover for his improvements.

6. The statute (Tay. Stats., 706, § 12) which forbids the erection, etc., of a slaughter house "upon the banks of any river, stream or creek which shall flow through any city or incorporated village," must be construed to relate to the erection of· such house upon the banks of such stream *above* the place where it flows through such city or village.

7. Where the right of defendant in ejectment to recover for an improvement consisting of a slaughter house is denied on the ground that the erection thereof was in violation of said statute, even if this court could take judicial notice that a certain river flows through a certain city of this state, and should assume that said river· is the

stream on which the lots here in dispute abut, still it could not take judicial notice of the position of said lots on the city plat, or assume that the river flows through any part of said city *after passing* said lots.

APPEAL from the Circuit Court for *Fond du Lac* County.

In an action brought by the defendant against the plaintiff to recover certain lots in the city of Sheboygan, the former had a verdict therefor. The defendant in that action thereupon interposed a claim for improvements made by him upon the lots in question, and an issue was made up and tried, which resulted in an assessment of damages for such improvements, in favor of the present plaintiff, in the sum of $350. Judgment was duly entered upon such verdict, and the defendant in this proceeding appealed to this court.

The proceedings in the circuit court were in accordance with the provisions of the statute sometimes called the " Betterment Act " (Tay. Stats., 1672, §§ 30 to 33 inclusive) ; and it appeared on the trial, by the pleadings and proofs, that the plaintiff went into possession of the lots in question under two tax deeds thereof, executed to him by the clerk of the board of supervisors of Sheboygan county, on the tax sales of 1861 and 1862, for the unpaid taxes assessed in 1859 and 1861 respectively. It further appeared that the lots were not assessed, in the assessment roll of 1859, to any owner, neither was there written opposite the description of such lots the word " unknown." The same is true of the assessment roll of 1861, except that opposite one of the lots the word " Gilman " was written. No other irregularity in the proceedings which resulted in the ex· ecution of such tax deeds, is pointed out.

The improvements for which the plaintiff claimed to recover consisted of a slaughter house and fixtures erected by him, and the testimony concerning their value was quite conflicting. The court refused to give the following instructions, which were asked on behalf of the defendant ; and exceptions were duly taken to such refusal.

"1. The plaintiff in this action having failed to show that the deeds for the sales of the lots 1 and 2, in block 137, in Sheboygan city, were made on account of the sales of said lots for the payment of taxes *lawfully assessed thereon*, he cannot recover.

"2. The defendant having shown that the assessments upon which the sales of said lots were based, and under which sales, and the deeds thereon, the plaintiff claimed title, were not *lawful* assessments, the plaintiff cannot recover.

"3. The plaintiff, if entitled to recover at all, can only recover the amount of the value of the improvements upon said lots for other than slaughter house purposes.

"4. The jury cannot take into consideration the value of the improvements for slaughter house purposes, but can only take into consideration their value to change into some other use or occupation."

*J. H. Jones*, for appellant.

*Conrad Krez*, contra.

LYON, J. I. The first and most important question to be considered is, whether the plaintiff is entitled to recover any sum for improvements made by him upon the lots recovered by the defendant in the original action. This question is by no means free from difficulty. It will be conceded, doubtless, that the right to recover compensation in this action for permanent improvements, if such right exists, is founded upon the provisions of some statute. There is no rule of the common law which can be successfully invoked to support the action. 2 Kent's Com., 334. The statutes bearing upon the question are ch. 141, R. S. of 1858, sections 30 to 33 inclusive. Unless we can find that the right of action is given in these sections, the plaintiff must fail to recover for his improvements.

Sections 30, 31 and 32 are substantially the same as chapter 107, R. S. of 1849. They provide, in substance, that a defendant in an action to recover real property, who is defeated in the

action, may, by a supplemental proceeding, recover judgment against the plaintiff in the ejectment suit for the value of the permanent improvements made in good faith by the former on the lands recovered by the latter, in the following cases: 1. When such defendant claims title to the land in controversy by virtue of a deed or conveyance executed by any officer authorized by the laws of this state to execute the same on account of any sale of such lands for the payment of any tax lawfully assessed thereon ; and 2. When he claims title in fee simple, under or by virtue of a deed from any other officer or person, the plaintiff in the action claiming title to the premises from some other source. Whenever a recovery for improvements is had under those provisions, execution in the original action is stayed until the plaintiff shall pay the judgment recovered against him for such improvements; and if he fails to pay the same for three years, he is thereby forever barred from recovering the premises claimed, and is held liable to pay the costs of the action or proceeding to assess the value of such improvements.

It will thus be seen that no person can claim the benefit of these provisions, if he holds under a tax deed, unless the same be executed on account of a sale for taxes *lawfully assessed* on the premises conveyed, and by an officer authorized by law to execute the same.

Section 33 is as follows: "In all cases where a recovery shall be made of lands, tenements, or hereditaments, on which the party in possession, or those under whom he claims, holding adversely by color, or title asserted in good faith, founded on descent or any written instrument, shall have made valuable and permanent improvements, such party shall have a lien on such real estate for the value of such improvements, and the court in which any action may be brought to recover possession of any lands so improved, may summon a jury to assess and ascertain the value of such improvements, and judgment shall thereupon be rendered by said court, to be enforced as other

judgment liens on said real estate are enforced by law." Tay. Stats., 1673, § 33. This section was first enacted in 1857 (see Laws of that year, ch. 84, sec. 2), and is much more extensive in its scope than the law of 1849 above mentioned. And inasmuch as it includes all of the cases provided for in the law of 1849, and gives a different remedy, it may be that the latter law was repealed or suspended by the act of 1857. It will be observed that under the law of 1857 the judgment for the value of permanent improvements is enforced by a sale of the premises upon which it is a lien, as in other cases of judgment lien, while, as we have seen, no such remedy is given by the law of 1849. But whatever may have been the effect of the act of 1857 upon that of 1849, they were both re-enacted in the revised statutes of 1858. They are therefore both in force, and must be construed in *pari materia*, and so as to give effect if possible to the provisions of both.

So far as the question involved in this action is concerned, but one construction can be given to these sections as they now stand. Notwithstanding the general and comprehensive words used in section 33 in respect to the cases in which the value of improvements may be recovered (words sufficiently broad, certainly, to include within its provisions a holding in good faith under any tax deed), still it must be held that tax deeds are excluded therefrom, and that a person holding under a tax deed, and claiming for improvements, must establish his right to recover therefor through the sections of the law enacted in 1849, or he will fail. This is the only construction which will give any force or effect to those sections, and the well settled rules of statutory construction require us to adopt it as the true one.

The plaintiff, being compelled to make out his right to recover for his improvements under the law of 1849 thus re-enacted in 1858, can only do so, as we have already seen, by producing a tax deed executed by an officer authorized by law to execute the same, and also executed on account of a sale for taxes *lawfully assessed* on the lots which it purports to convey.

Has the plaintiff produced a tax deed having these essential characteristics ?

We have no doubt that the statute, when it refers to "any officer authorized by the laws of this state to execute the same," means an officer authorized to execute tax deeds, and is not restricted to one authorized to execute the particular deed in question.   The opposite construction is too narrow.   Were it to prevail, no defendant in ejectment, claiming title under a defective or invalid tax deed, could recover for his improvements, no matter how meritorious his claim might be ; for there is no officer who is authorized by law to execute a defective or invalid tax deed.   Further, if the legislature intended by this language to designate an officer who had authority to execute the specific deed under which the defendant in the ejectment suit claims, it would be equivalent to enacting that a claimant under a tax deed shall not recover for improvements unless he has a valid tax deed, which would defeat the ejectment suit entirely.   Such legislation would be absurd.   We think, therefore, that the tax deeds under which the plaintiff in this action claims, were executed by an officer designated in section 30.

We are next to inquire what is intended by the qualification or restriction in the statute to the effect that the tax must be *lawfully assessed* to entitle the claimant under the tax deed to recover for permanent improvements.   The term "*lawfully assessed*" may mean an assessment made strictly in accordance with the requirements of the statute in *every* respect ; or it may mean an assessment of taxes upon land liable to taxation, for the sum which the owner thereof ought to contribute to the public burdens, because of such ownership.   In other words, the term may mean an assessment which, though irregular or defective in some minor particulars, yet is so manifestly just that a court of equity would refuse to relieve against it.

Conceding, for the purposes of this appeal, that the tax deeds under which the respondent claimed were fatally de-

fective by reason of the omission from the assessment roll of the name of the owner, or of the word "unknown," set opposite the lots in controversy, it is still perfectly well settled that a court of equity would not relieve against the tax. The lots were liable to taxation, and no complaint is made that they were assessed or taxed too high; and it is reasonable and just that the owner pay the taxes assessed upon them, notwithstanding the alleged irregularity in the assessment. Hence, if the more liberal construction of the term "lawfully assessed" be adopted, the respondent has brought himself within the provisions of the statute, and is entitled to be paid for his permanent improvements, it not being denied that the same were made by him in entire good faith.

The whole course of our legislation on the subject of taxation proves it to be the settled policy of this state to give all adequate protection against a tax unjustly or wrongfully assessed, but not to favor a person who seeks to avoid payment of his just proportion of the public burdens, merely because some technical omission or irregularity has occurred in assessing a tax upon his property, but which does not affect the justice of the tax. Numerous adjudications of this court faithfully enforce and carry out such policy. It is believed that the statute under consideration was intended by the legislature to sustain the same policy. Hence, if the tax was not lawfully assessed, that is to say, if it was an unjust tax, one against which a court of equity would relieve the owner of the lots, such owner cannot be held liable for the improvements made thereon by the holder of the tax deeds. But if the tax be a just one — if it be a tax against which a court of equity would refuse to relieve — then, although irregularities may have intervened in assessing it, still it is "*lawfully assessed*," within the meaning of the statute, and the original owner may be held liable for permanent improvements made by the claimant under the tax deeds.

It must be held, therefore, that the tax deeds under which the respondent claims bring him within the provisions of the "betterment" law, and entitle him to recover of the appellant the value of the permanent improvements made by him on the lots in question.     Hence, the learned circuit judge did not err in refusing to give the first and second instructions asked on behalf of the appellant.

II. Was it error to refuse the third and fourth instructions, relating to the measure of damages ?   The improvements for which the respondent recovered, consisted mainly of a slaughter house, and the instructions assume that it was unlawfully erected on the lots in question.   The law which is claimed to have been violated by the erection of such slaughter house is as follows :   " Hereafter it shall be unlawful for any person or persons to erect, maintain or keep a slaughter house upon the banks of any river, stream or creek, or to throw or deposit any of the carcasses or offal therefrom in or upon the banks of any such river, stream or creek, which shall flow through any city or incorporated village in this state." Tay. Stats., 706, § 12.

Without stopping to consider whether this section of the statute has any force in the city of Sheboygan, it is a sufficient answer to the position of the appellant that the evidence. in the case fails to show that the river, on the bank of which the slaughter house was erected, flows through the city of Sheboygan.   And were we to take judicial notice of the fact that the Sheboygan river does flow through that city, and were we to assume that the river on which the lots in question abut, is the Sheboygan river (a fact which does not seem to be proved), still we have no proof that the river flows through the city below the slaughter house.   We cannot take judicial notice of the location of these lots on the city plat, and we cannot know from the bill of exceptions but that the river leaves the city limits at the precise point where the slaughter house is located. If that is the case, it is clear that the statute does not prohibit the erection of a slaughter house at that point.

The object of the statute is to preserve the purity of the stream through the city or village, and a slaughter house which does not render the stream impure within the corporate limits is not within the prohibition of the law. It may be further observed that the statute is a penal one, and must be strictly construed.

We find no error in the rulings of the circuit court, and are of the opinion that the judgment of that court should be affirmed.

*By the Court.*—Judgment affirmed.